IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>ANGEL LUIS COLON MARTINEZ,<br><br>       Debtor(s). | Case No. 10-09746 (MCF)<br><br>Chapter 11 |

## DECISION AND ORDER

Upon review of Allied Management Group, Inc.'s (hereafter "Allied") motion to convert (Docket No. 77), Debtor's opposition thereto (Docket No. 79), Debtor's supplement to his opposition (Docket No. 88), Allied's reply (Docket No. 89), as well as the averments made in open Court on July 14, 2011 (Docket No. 90), the Court hereby DENIES Allied's motion to convert the case to Chapter 7 for the reasons herein stated.

## I. PROCEDURAL HISTORY

Debtor, Angel Luis Colon Martinez, a retired physician who owns various real estate properties in Santurce, Hato Rey, Guanica and Caguas, filed the instant case as a pro se voluntary petition under Chapter 11 of the Bankruptcy Code (the "Code") on October 18, 2010 (Docket No. 1).[1] At the time of the bankruptcy filing, Allied was Debtor's largest secured creditor, whose collateral covers three out of Debtor's four real estate properties (Proof of Claim No. 2).

---

[1] This is Debtor's second bankruptcy filing within a one year period. The first case, Case No. 08-02394 (MCF), was dismissed on February 5, 2010.

1

On June 22, 2011, Allied filed a motion to convert this case to a proceeding under Chapter 7, pursuant to 11 U.S.C. § 1112(b)(4)(A) (Docket No. 77). Allied's request is premised on the argument that there is a continuing loss or diminution of Debtor's estate and the absence of a reasonable likelihood that Debtor can be rehabilitated. Allied based its position on Debtor's lack of post-petition payment towards Allied's indebtedness, as well as a decline in value of Debtor's real estate properties, among other things.

Debtor opposed Allied's assertions on July 5, 2011 (Docket No. 79), whereby Debtor argued that he had previously proffered to turn over to Allied the monthly rental income of one of his real estate properties as payment to Allied's debt (an offer that Allied allegedly refused, and continues to refuse to date). See Docket No. 79 at 2. Debtor also contested Allied's contention that the real estate properties were declining in value. Moreover, Debtor filed the outstanding Monthly Operating Reports for the months of April, May and June, 2011[2] (Dockets No. 80, 81 and 82).

Debtor filed a supplemental opposition to Allied's motion to convert on July 20, 2011 (Docket No. 88). In said supplement,

---

[2] Debtor was briefly represented by counsel during the period from December 20, 2010 to June 1, 2011 (Dockets No. 19, 24, 66, 69, and 73). According to Debtor, the Monthly Operating Reports for April, May and June were not timely filed as a result of his legal counsel's resignation; as such they were prepared and filed by Debtor himself (Docket No. 79).

2

Debtor once again reinstated his offer to tender over the monthly rental income of one of his real properties as payment to Allied's debt, as well as filed a proposed Chapter 11 Plan of Reorganization.

Allied filed a reply to Debtor's oppositions on July 22, 2011, wherein it provided complementary documentation to support conversion of the case (Docket No. 89).

## II. DISCUSSION

Section 1112(b)(1) of the Bankruptcy Code contains the legal provision by which a party in interest may request the conversion of a Chapter 11 case to a Chapter 7 case. The same provides in relevant parts:

> ...on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause...

11 U.S.C. § 1112(b)(1).

"Cause" for purposes of conversion is not defined in the Code. However, Section 1112(b)(4) provides sixteen examples of what is considered "cause" for conversion.[3]  Allied argues

---

[3] The sixteen examples are as follows:

> For purposes of this subsection, the term "cause" includes-
>     (A)  substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>     (B)  gross mismanagement of the estate;
>     (C)  failure to maintain appropriate insurance that poses a risk to the estate or to the public;

"cause" in the instant case under the first example of 11 U.S.C. § 1112(b)(4)(A), that is under the prong of substantial or continuing loss to or diminution of the bankruptcy estate and the absence of a reasonable likelihood of rehabilitation by the Debtor.

According to Colliers,

> [the] movant bears the initial burden of demonstrating that cause exists to convert the chapter 11 case to chapter 7,… whichever is in the best interest of creditors and the

---

(D)   unauthorized use of cash collateral substantially harmful to 1 or more creditors;

(E)   failure to comply with an order of the court;

(F)   unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

(G)   failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(H)   failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);

(I)   failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

(J)   failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

(K)   failure to pay any fees or charges required under chapter 123 of title 28;

(L) revocation of an order of confirmation under section 1144;

(M)   inability to effectuate substantial consummation of a confirmed plan;

(N)   material default by the debtor with respect to a confirmed plan;

(O)   termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and

(P)   failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b)(4).

> estate...Thus, until the movant carries this burden, the statutory direction that the court 'shall convert the case to a case under chapter 7 or dismiss the case' is not operative.

7-1112 COLLIERS ON BANKRUPTCY ¶ 1112.04.

It is a well-settled axiom that, for purposes of conversion under Section 1112(b), "cause" shall be demonstrated through the preponderance of evidence standard. Keven, A. McKenna, P.C. v. Official Comm. of Unsecured Creditors (In re Keven, A. McKenna, P.C.), 2011 U.S. Dist. LEXIS 57985 (D.R.I 2011); In re El Legado, 2010 Bankr. LEXIS 1676, 2010 WL 1924439 (Bankr. D.P.R. 2010); In re Woodbrook Assoc., 19 F.3d 312 (7th Cir. 1994); Colonial Daytona Ltd. Partnership v. American Sav. of Fla, 152 B.R. 996, 1001-1002 (M.D. Fla. 1993).

Based on the aforementioned framework, and considering that Allied is requesting conversion under sub-section (A) of Section 1112(b)(4), Allied bears the burden of demonstrating before this Court, through preponderance of evidence, a loss or diminution to the bankruptcy estate as well as an absence of rehabilitation by Debtor.

Allied asserts the following four factors in favor of its position for conversion: (1) the decline in value of Debtor's real estate properties; (2) Debtor's lack of post-petition payments to Allied; (3) Debtor's inability to fund a plan of

5

reorganization; and (4) Debtor's failure to file a Chapter 11 Plan of Reorganization (Docket No. 77).

With regards to Allied's contention that Debtor's real estate properties have been declining in value, Allied is basing the same on the appraisals performed on said properties in 2006 (Docket No. 77, Attachments II, III, and IV); "common knowledge based on the current depreciation of the real estate properties in Puerto Rico" (Docket No. 89 at 2); and a statement issued by Debtor's former accountant as to the "issues concerning the feasibility of the plan of reorganization in this case, based on the recent appraisal report over Debtor's Real Estate Property" (Docket No. 89 at 3, citing from Docket No. 65 at ¶ 3).[4]

While the 2006 appraisals are persuasive in this matter, it must be noted that the same were performed five (5) years ago. Much could have happened between 2006 and 2011. In fact, Debtor's properties may have depreciated, or even appreciated, during this period of time. Given the age of these appraisals, and the uncertainty of the current real estate market, these 2006 values are not a reliable measure for which to determine the value of Debtor's real properties as of today's date and much less a substantial or continuing loss to or diminution of the estate.

---

[4] Debtor had also briefly retained an accountant from the period of December 20, 2010 to July 27, 2011 (Dockets No. 20, 25, 65, and 91).

In addition, the difference between the amount of Debtor's indebtedness and the 2006 appraisals range from $2,400 to $94,000 approximately, which are close margins. On the other hand, Debtor's Amended Schedules suggest that Allied is an oversecured creditor on all of its collateral security. Docket No. 29 at 5. With this discrepancy and the age of the appraisals, this Court has not been placed in a position to make a factual finding that there has been loss or a diminution of the estate.

As to the allegation of "common knowledge based on the current depreciation of the real estate properties in Puerto Rico" is concerned, the Court cannot use this blanket statement as a conclusive finding of fact absent any other evidence reflecting the value of Debtor's real estate properties in the Island's current real estate market, such as more recent property appraisals.

Furthermore, Allied's reliance on a statement issued by Debtor's former accountant (Docket No. 65 at ¶ 3) cannot be considered by this Court as a proffer of proof, nor does it qualify as either a finding of fact or a qualitative statement as to the value of Debtor's real estate properties, for said comments were issued in the context of the accountant indicating to the Court the scope of his engagement towards Debtor, as well as the work that was performed by him up until his resignation

as a professional for the estate.  Furthermore, Debtor's former accountant was not engaged or qualified as an expert in real estate values, and the Court was not provided with the alleged recent appraisals referred to by Debtor's former accountant.

With regards to Allied's second argument in favor of conversion, the lack of post-petition payments, Allied has not presented any evidence to this Court as to how Debtor's lack of payment to Allied has contributed to a loss or diminution of the bankruptcy estate and/or to a lack of rehabilitation by Debtor, especially when considering Debtor's assertion that it has offered (and continues to offer) to Allied the monthly rental income of one of his real properties as payment for their post-petition debt (Dockets No. 79 and 88). In fact, one of Debtor's specific provisions of his proposed Chapter 11 Plan includes the tendering over of said rental income to Allied to be applied to their debt. See Docket No. 88 at 2 - 4.

Allied's third argument for conversion (that Debtor is unable to fund a Chapter 11 plan of reorganization) is premised almost exclusively on the information, or lack hereof, contained at Debtor's Monthly Operating Reports. As far as the information included in said reports is concerned, it must be noted that the majority of these reports were prepared and filed by Debtor himself in a pro se capacity. Notwithstanding this, Allied did not take into account other information concerning Debtor's

assets and income to determine a likelihood of reorganization, such as the apparently unencumbered real estate property located at Floral Park in Hato Rey (as per Debtor's Schedule A) and how this equity of approximately $650,000 may be applied to a possible plan of reorganization, if any. See Docket No. 1 at 9; Docket No. 29 at 5 and 6.

According to the Summary of Schedules and its amendments, Debtor allegedly reports more assets than liabilities, possibly indicating that Debtor is able to pay his creditors in full. Docket No. 1 at 7 and Docket No. 29 at 3. Therefore, Allied has not demonstrated to this Court a lack by Debtor to fund and/or propose a plan of reorganization.

Allied's final contention in support of conversion, regarding Debtor's failure to file a plan of reorganization, has become moot in view of the recent filing of a proposed Chapter 11 Plan by Debtor on July 20, 2011 (Docket No. 88).[5]

Based on the record, Allied has not complied with its burden of demonstrating through preponderance of evidence the existence of a substantial or continuing loss to or diminution of the bankruptcy estate and the absence of a reasonable likelihood of rehabilitation by the Debtor. Consequently,

---

[5] The Court realizes that this pro se Debtor will have to amend his plan, for the same, as filed, does not comply with 11 U.S.C. § 1129; however, Debtor has shown initiative to comply with his duties under the Bankruptcy Code. The Court again urges the Debtor to obtain legal representation and/or financial advisor.

9

Allied's motion for conversion to Chapter 7 (Docket No. 77) is denied without prejudice.

### ORDER

WHEREFORE, Allied's motion for conversion of the instant case to a proceeding under Chapter 7 (Docket No. 77) shall be, and hereby is, DENIED without prejudice.

SO ORDERED.

San Juan, Puerto Rico, this 29th day of July, 2011.

BY THE COURT:


/S/MILDRED CABAN FLORES
U.S. Bankruptcy Judge

10